**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

TROY EDWIN NEHLS                                    :
                                                   :
    Plaintiff,                                 :
                                                   :
        v.                               :     Case No.: 1:25-cv-2568
                                                   :
UNITED STATES OF AMERICA                           :
                                                   :
    Defendant.                                 :

## PLAINTIFF TROY NEHLS' RESPONSE TO DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Plaintiff Congressman Troy Nehls, by his counsel, opposes the United States of

America's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State Claim.

**Table of Contents**

FACTUAL BACKGROUND .................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

   I.   LEGAL STANDARDS ................................................................................................ 3

   II.   PLAINTIFF'S FALSE LIGHT INVASION OF PRIVACY CLAIM IS NOT
       BARRED BY SOVEREIGN IMMUNITY. ................................................................. 4

       A.  Legal Standards.................................................................................................. 4

       B.  The False Light Invasion of Privacy Claim is Not Based on Defamation,
            Because the Amended Complaint Does Not Allege that Government Agents
            Disseminated Information to the Public. ........................................................... 7

       C.  Under The Law Enforcement Proviso, which Overrides the Intentional Tort
            Exception of § 2680(h), The Acts of Government Agents Arise Out of a
            Malicious Prosecution..................................................................................... 9

   III.  THE AMENDED COMPLAINT ALLEGES PLAUSIBLE CLAIMS FOR RELIEF
       ON ALL COUNTS. ................................................................................................11

       A.  The Allegations of the Complaint Plausibly Allege a Claim for Invasion of
            Privacy for Intrusion on Seclusion..................................................................11

       B.  The Amended Complaint States a Claim for Publication of Private Facts. ..... 15

           1.  Privacy of the Notes........................................................................... 16

           2.  The Contention that the Officer Complied with USCP Policies Falls
               Outside of the Allegations of the Complaint and is Not a Proper Basis
               for a Motion to Dismiss. ................................................................... 16

           3.  The Notes on the Whiteboard are Private, Not Public, Facts. ............ 17

           4.  Publicity ............................................................................................ 17

       C.  The Trespass Claim Alleges a Plausible Claim for Relief. ............................. 17

       D.  The False Light Invasion of Privacy of Claim States a Claim for Relief. ...... 18

   IV.  CONCLUSION....................................................................................................... 19

CERTIFICATE OF SERVICE .......................................................................................... 19

**Table of Authorities**

*Armstrong v. Thompson*,
  80 A.3d 177 (D.C. 1993) …………………………………………………………17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ………………………………………………………………..4

*Bernstein v. National Broadcasting Co.*,
  129 F.Supp. 817 (D.D.C. 1955)…………………………………………………….6

*Bivens v. Six Unknown Fed. Narcotics Agents*,
  403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)…………………………………..10

*Black v. Sheraton Corp. of America*,
  564 F.2d 531 (1977) ………………………………………………….....4, 5, 6, 7, 8

*Block v. North Dakota*,
  461 U.S. 273, 299 (1983) ………………………………………………………….9

*Conley v. Gibson*,
  355 U.S. 41 (1957) …………………………………………………………………3

*Doe v. Bernabei & Wachtel, PLLC*,
  116 A.3d 1262 (D.C. 2015) ………………………………………………………15

*Edmonds v. United States*,
  436 F.Supp. 2d 28 (D.D.C. 2006) …………………………………………………7

*Garay v. Liriano*,
  943 F. Supp. 2d 1 (D.D.C. 2013) …………………………………………………14

*Gravel v. United States*,
  408 U.S. 606 (1972) ………………………………………………………………14

*Greenpeace, Inc. v. Dow Chem. Co.*,
  97 A.3d 1053 (D.C. 2014) ………………………………………………………...18

*In re Sealed Case*,
  80 F.4d 355 (D.C. Cir. 2023) ……………………………………………………..15

*Johnson v. Sawyer*,
  47 F3d 716, 732 n. 34 (5th Cir. 1995) ……………………………………………..7

*Klugel v. Small*,
  519 F.Supp. 2d 66 (D.D.C. 2007) …………………………………………….......8, 9

*Kugel v. United States,*
    947 F.2D 1504 (D.C. Cir. 1991) ……………………………………………3, 6, 7, 8, 9

*Martin v. United States,*
    605 U.S. 395, 404 (2025) ……………………………………………………..9

*Metz v. United States,*
    788 F.2d 1528 (11th Cir. 1986) ………………………………………………7

*Paige v. Drug Enforcement Admin.,*
    665 F.3d 1355 (D.C. Cir. 2012) ……………………………………………..17

*Pearson v. Dodd,*
    410 F.2d 701 (D.C. Cir. 1969) ……………………………………….......13, 15

*Peter v. United States,*
    579 F.Supp. 2d 78 D.D.C. (2009) ……………………………………………7

*Reed v. Real Detective Publishing Co.,*
    162 P.2d 133, 139 (Ariz 1945)………………………………………………...6

*Robinson v. Farley,*
    264 F. Supp.3d 154 (D.D.C. 2017) …………………………………………..17

*See v. City of Seattle,*
    387 U.S. 541 (1967) …………………………………………………………14

*United States v. Shearer,*
    473 U.S. 52, 54 (1985) ………………………………………………………..4

*Wolf v. Regardie,*
    553 A.2d 1213 (D.C. 1989) ………………………………………………...11, 13

**Statutes**
28 U.S.C. § 1346(b) …………………………………………………………......4
28 U.S.C. § 2680……………………………………………………4, 5, 6, 7, 9, 10
S. Rep.No. 93-588, 93[d] Cong., 2d Sess. (1973) ……………………………………4, 10

**Rules**
Federal Rules of Civil Procedure 12(b)(1) …………………………………………......3
Federal Rules of Civil Procedure 12(b)(6) ………………………………………………3, 16

**United States Constitution**
Fourth Amendment ………………………………………………………………13, 14
U.S. Const., Art. I § 6 …………………………………………………………...13

## FACTUAL BACKGROUND

Plaintiff Troy Edwin Nehls is a Congressman who represents the 33rd District of Texas. At all times relevant to facts of this case, Plaintiff maintained a congressional office in the Longworth Building, Room #104, located on the grounds of the United States Capitol. First Amended Complaint, ECF # 18, para. 7. His complaint alleges that he exercised possessory rights over the office and has the right to exclude others from his office. *Id*. His office had three entrance doors. *Id*. One of those doors had a sign indicating "Members and Staff Only." *Id*. This door led directly to an area reserved for the Congressman's privacy. *Id*. That area included a whiteboard used by the Congressman to make notes about proposed legislation and hold meetings with his staff. *Id*. His complaint alleges that his "notes contained the Congressman's confidential thoughts and ideas about the legislation; and he expected that no one, other than himself or his staff, would examine or read those notes." *Id*., ⁋ 10.

On November 20, 2021, a Saturday before Thanksgiving, Congressman Nehls and his staff were not in his office and Congress was out of session. ECF#18, ⁋ 9. The Members and Staff Only door was closed and locked, as the last persons in the office were the cleaning crew the previous evening but they always lock doors when they are done. *Id*., 14(b). At 3:35 p.m., a United States Capitol Police ("USCP") officer, Kevin Dias #7338, claims that he was conducting "yellow-alert checks" in the Longworth Building on Capitol Hill[1] and that he found Room 1104's "Members and Staff Only" door wide open. *Id*., ⁋⁋ 13-14(b). The door in question was self-closing and in good working order and was not "wide open." *Id*., ⁋ 14(b). Nor was the door propped open. *Id*.

Once he stepped into the privacy area, Officer Dias saw the whiteboard and turned his attention to what was on it. *Id*. ⁋ 12. He saw the whiteboard which in his words contained

---

[1] According to the complaint, by regulation yellow alert checks are done when a bomb or explosive device is believed to be on Capitol grounds. First Amended Complaint, ⁋ 14a.

"suspicious writings mentioning body armor" and "an outline of the Rayburn Building next to Longworth Building and Rayburn building next to it with an 'x' marking the C Street entrance of the Rayburn. *Id.*, ¶ 13.

The amended complaint alleges that "[i]t would not have been readily apparent to any reasonable police officer … that the writings on the whiteboard were evidence of a crime that was committed or about to be committed … [and that] [a] reasonable Capitol Police officer instead would have recognized the notes for what they were, i.e., notes by the Congressman and his staff pertaining to drafting legislation." *Id.*, ¶ 14(c).

Nonetheless, Officer Dias photographed the whiteboard and "fully capture[d] and preserve[d] the Congressman's notes." *Id.*, ¶ 12. In a report he wrote later -- quoted verbatim in the amended complaint-- Officer Dias omitted to mention that he photographed the Congressman's whiteboard. *Id.*, ¶ 13.

Officer Dias reportedly completed the report at 4:00 p.m. *Id.*, ¶ 13. About a hour and a half later he reportedly notified an officer in the "Threat Assessment Center," and five hours after that sent the same officer the photograph of the Congressman's whiteboard and his report. *Id.*, 15-16. A Sergeant in the Threat Assessment Center reportedly contacted three Sergeants in the Intelligence Operations Section about the case. Id., ¶¶ 15-18. On November 22, 2021, three Capitol Police officers, casually dressed and not looking like police officers, were directed to go to the Congressman's office. *Id.*, ¶ 18, 19. No notice was given to Congressman or his staff. *Id.*, ¶ 17. It so happened that one of the Congressman's legislative aids was in the office and responded to the door. *Id.* The officers asked questions about whiteboard and what the writings meant. Id. The aid answered the questions and divulged what the notes referred to. *Id.*, ¶ 18.

Notwithstanding the absence of evidence that Congressman Nehls was engaged in any criminal or inappropriate conduct, and that his notes were off-limits for search or seizure without a judicially authorized warrant, a USCP officer entered Officer Dias' report and photograph into USCP's permanent records on November 23, 2021. ECF# 18, ⸙ 20.

Congressman Nehls was later informed about the unauthorized actions and he was "appalled and outraged." *Id*., ⸙ 21. He regarded it as a threat to his liberties and complained directly to the Chief of USCP and requested for an investigation by the Office of Inspector General. *Id*., ⸙ 21. He worried that elements of USCP retaliated against him for his speech and criticism of the agency and he worried also "what else the Capitol Police might do to him." He took precautions to sweep his office for listening devices. *Id*., ⸙ 24.  He suffered emotional distress, anxiety, humiliation and damage to his reputation. *Id*.

## ARGUMENT

### I.    LEGAL STANDARDS

The government's motion has set forth the correct legal standard for a motion to dismiss under Rule 12(b)(1) and that a plaintiff bears the burden to establish the court's subject jurisdiction over the complaint.

On a motion to dismiss under Rule 12(b)(6) for failure to state a claim for relief, a court "construe[s] the facts in the light most favorable to the plaintiff." *Kugel v. United States*, 947 F.2d 1504, 1505 (D.C. Cir. 1991). A complaint may not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, such that a court may

draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. PLAINTIFF'S FALSE LIGHT INVASION OF PRIVACY CLAIM IS NOT BARRED BY SOVEREIGN IMMUNITY.

### A. Legal Standards.

The Federal Tort Claims Act ("the Act") gives federal district courts exclusive jurisdiction over claims against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission" of a federal employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). This broad waiver of sovereign immunity is subject to exceptions set forth in § 2680. One such exception, known as the "intentional tort" exception, *United States v. Shearer,* 473 U.S. 52, 54 (1985), preserves the government's immunity from suit for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."[2] § 2680(h).

In *Black v. Sheraton Corp. of America*, 564 F2d 531, 539 (1977) the D.C. Circuit held that invasion of privacy of privacy is not an enumerated tort for which Congress intended to preserve the government's sovereign immunity under § 2680(h). The Court noted the legislative history when Congress' amended § 2680(h) to add the law enforcement proviso. Commenting on the 1973 Senate Report[3] that accompanied the amendment, the Court stated:

---

[2] In 1974, Congress carved out an exception to § 2680(h) 's intentional torts exception. It added a proviso for certain intentional torts arising out of the conduct of law enforcement officers. See Act of Mar. 16, 1974, Pub. L. 93–253, § 2, 88 Stat. 50. This "law enforcement proviso," as it came to be known, countermands the exception with respect to acts arising out of six intentional torts (assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution). Congress did not include in the law enforcement proviso the intentional torts of libel or slander. The D.C. Circuit has commented that Congress included libel and slander in the intentional tort exception in the first place because there was a "concern was that government officials should not be hampered in their writing and speaking by the possibility that their actions would give rise to government liability." *Black v. Sheraton Corp. of America*, 564 F.2d 531, 541 (1977).
[3] S. Rep.No. 93-588, 93[d] Cong., 2d Sess. (1973), reported in 2 U.S. Cong. & Admin.News, p. 2789 (1974

The Senate Report explained that "as a general principle," individuals whose rights were violated by federal law enforcement agents did not have an effective remedy against the federal government. The Committee therefore recommended that that the government's liability with respect to the acts of such agents be expanded to include such torts as assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process.

The Committee realizes that under the Federal Tort Claims Act, Government tort liability for intentional conduct is unclear. For example, certain intentional torts such as trespass and invasion of privacy are not always excluded from the Federal Tort Claims Act coverage. *Obviously, it is the intent of the Committee that these borderline cases under the present law, such as trespass and invasion of privacy, would be viewed as clearly within the scope of the Federal Tort Claims Act, if the Amendment is adopted.*

The Committee did not recommend any language to expand liability to cover these torts, apparently because it believed that, under a proper interpretation, the existing law provided for such liability. Given the Committee's expressed intention to maintain liability for trespass and invasion of privacy, and to expand liability for other constitutional torts, it would be a perversion of legislative history to rely upon the Committee's inconclusive observations as to the state of the prior law as a basis for denying recovery in this lawsuit. (*Emphasis added*.)

In *Black* federal law enforcement agents placed a listening device on a common wall adjacent to his room at a hotel and eavesdropped on Black. Black alleged that FBI reports relied upon the eavesdrops to destroy the plaintiff's livelihood and damage his reputation. Black sued under the Act and brought claims of trespass, invasion of privacy by intrusion, invasion of privacy by publication, and violation of constitutional rights. 564 F.2d at 539. The government maintained that "that because plaintiff seeks to recover for injury to his reputation, his claim is barred by the "libel" and "slander" exceptions of § 2680(h)." *Id*., 540. It also argued that Black's claim for loss of employment income was barred by the exception for "interference with contract rights." *Id*. The Court stated: "We disagree with these contentions because we believe that the government mistakes particular items of damages for tortious wrongs alleged in the complaint." *Id*. ) The Court went on: "Plaintiff is not simply suing damages to his reputation and to his earning ability, he is suing for physical trespass and unlawful invasion of privacy that cause that damage." *Id*. The Court

held, *id*., 56: "Since the Tort Claims Act does not give immunity for the type of activity for which in which the government was here alleged to be involved, i.e., trespass and invasion of privacy, we hold that plaintiff's claim for damages arising therefrom is not barred." *Id*.

     *Black* has never been expressly overruled and for good reason. Defamation is altogether different from a false light invasion of privacy tort. The injury due to the invasion of privacy is the injury to the feelings of a plaintiff, such as humiliation, outrage and emotional distress. Defamation on the other hand is intended to remedy injury to the plaintiff's character and reputation. *See Bernstein v. National Broadcasting Co.*, 129 F.Supp. 817 (D.D.C. 1955)("'The gravamen of the action [for invasion of privacy]… is the injury to the feelings of the plaintiff, the mental anguish and distress caused by the publication. … Unlike libel and slander, the gist of the cause is not injury to the character or reputation which appertains to the standing of a person in the eyes of others and are attributes in law separate from the 'person'.") (*Quoting Reed v. Real Detective Publishing Co*., 162 P.2d 133, 139 (Ariz 1945). Since injury and harm for the torts of invasion of privacy and defamation are different, proving an invasion of privacy is not necessarily proving a defamation.

     In *Kugel v. United States*, 947 F.2d 156 (D.C. Cir. 1991), however, the Court retreated from *Black's* holding that an invasion of privacy claim was clearly within the scope of the Federal Tort Claims Act. Instead, it held that if the conduct at issue "arises out of" a libel or slander, then it meets the § 2680(h) exception. The Court applied the following test in its analysis of the case: "[W]e must decide whether Kugel's complaint states a claim resulting *solely* from the defamatory acts of government agents, in which case the intentional torts exception bars it, or whether he asserts a distinct negligence claim cognizable under the FTCA." *Id*., 904 F.2d at 1506 (*emphasis added*). Kugel entered into contracts with many North Carolina cities and agreed to bring

"downtown development to each locale." *Id.*, 1505. An FBI agent conducted an expedited two-week investigation in which he interviewed many parties to the contracts. Several North Carolina periodicals and one wire service carried articles about the investigation "including statements by the government about the nature of the investigation, its length and its inquiry into mail or other fraud." Id., 1506.  The Court concluded, *id.*, 1507:

> Here Kugel's complaint appears to allege a claim other than defamation. In assessing the nature of the claim, however, we must scrutinize the alleged cause of his injury. It appears to us that the cause of Kugel's injury was not the FBI's execution of the investigation but its dissemination of information associated with the investigation.  (*Internal citations and quotations omitted.*)

Paying no heed to *Black*, the Government follows the dictum in *Edmonds v. United States*, 436 F.Supp. 2d 28, 35 (D.D.C. 2006) that "[c]ourts consistently have held that that claims for 'false light' invasion are barred by the libel and slander." Oddly, *Edmonds* cites to only two cases for this dictum, and they are both outside the D.C. Circuit, namely, *Johnson v. Sawyer*, 47 F3d 716, 732 n. 34 (5th Cir. 1995) and *Metz v. United States*, 788 F.2d 1528, 1535 (11th Cir. 1986). Notably, the Government's memorandum cites to *Peter v. United States*, 579 F.Supp. 2d 78 (D.C.C. 2009), which relies upon *Edmonds'* dictum but with respect to another exception set forth in § 2680(h), namely, "interference with contract rights."

### B.  The False Light Invasion of Privacy Claim is Not Based on Defamation, Because the Amended Complaint Does Not Allege that Government Agents Disseminated Information to the Public.

The Government argues that "Plaintiff's false light invasion of privacy claim is barred by the libel and slander exception in section 2680(h) because it is premised on Plaintiff's allegation that the USCP *disclosed* false information to the public." ECF # 25-1, p.9. (*Emphasis added*.) It states that "news of the criminal investigation was disclosed to the public causing him to be falsely depicted as a criminal suspect," but without specifically indicating who disclosed the information

to the public. *Id.* Finally, it argues that "[d]ue to the *disclosure*, Plaintiff maintains that his reputation was injured… ." *Id.* (*Emphasis added.*)

The Government's reasoning is not supported by the allegations of the amended complaint. The amended complaint does not allege that the USCP officers disseminated facts about the case to the public. At most, it alleges that the "criminal investigation … caused publicity that placed the defendant in a false light." ECF# 18, ¶ 31. Viewing the allegations of the amended complaint in the light most favorable to the Plaintiff, there is no factual basis for the claim that government law enforcement agents *disseminated* facts about the case to the public. For this reason, it cannot be said that the false light invasion of privacy claim arises out of defamation.

The contrast between the type of activity of the law enforcement agents in *Kugel* and the present case are materially different as well. Unlike the FBI in *Kugel*, here the alleged cause of the injury to Plaintiff is not based upon the *dissemination* by government agents of information about the case to outside third parties. The cause of injury to the Plaintiff by the false light invasion of his privacy is solely due to invading his privacy by examining his private writings on a whiteboard, photographing such writings, and pursuing an investigation of the Plaintiff for possible criminal acts, which placed him in a false light.

Similarly, in *Klugel v. Small*, 519 F.Supp. 2d 66 (D.D.C. 2007) the government argued that the plaintiff's invasion of privacy claim arose from defamation. Klugel was a former federal employee who brought claims of sex discrimination against her employer, the United States, as well as claims of defamation and invasion of privacy under the Federal Tort Claims Act. Klugel became the subject of an investigation by her employer regarding allegations that she improperly used official travel to have a liaison with her husband. During the course of the investigation, the investigators made comments and asked questions about her sexuality that were defamatory and

invaded her privacy.  The government maintained that it was immune from liability for the invasion

of privacy claim because it arises out of the same nucleus of facts as plaintiff's defamation claim

and was barred by the libel and slander exception of § 2680(h).  The court did not sustain the

United States's position. It applied the principles espoused in *Kugel v. United States*, *supra*,

"scrutinize[d] the alleged cause of [plaintiff's] injury." The court concluded, *id*. at 75:

> An examination of the tort claims here reveals that they do not arise from the same
> underlying conduct. While there are several different kinds of invasion of privacy
> claims, Klugel alleges invasion of privacy by intrusion on seclusion.[8] That is, she
> alleges that defendants *asked* her unreasonable questions about her boyfriend and
> about her sexuality, and that these questions intruded on her private affairs. This is
> different than the alleged conduct underlying her defamation claim. The conduct
> underling the defamation claim is that the employees involved with the Inspector
> General's investigation wrongly *disseminated* information about her. While there is
> some factual overlap between the two claims—both involve information about
> Klugel—the "partial overlap ... does not support the conclusion that if one is
> excepted [under the FTCA] the other must be as well." *Block v. North Dakota*, 461
> U.S. 273, 299 (1983). Therefore, there is no basis to dismiss Klugel's invasion of
> privacy claim on sovereign immunity grounds.

### C. Under The Law Enforcement Proviso, which Overrides the Intentional Tort Exception of § 2680(h), The Acts of Government Agents Arise Out of a Malicious Prosecution.

In § 2680(h), the law enforcement proviso overrides the intentional tort exception.  Thus,

if the acts of federal law enforcement officers arise out of one of the enumerated torts ("assault,

battery, false arrest, false imprisonment, false arrest, malicious prosecution, or abuse of process"),

there is no sovereign immunity for the acts.  *Martin v. United States*, 605 U.S. 395, 404 (2025)(law

enforcement proviso "countermand[s] § 2680(h)'s intentional tort exception). In 1973, Congress

was spurred to amend the Act by two no-knock raids in Collinsville, Illinois which shocked the

nation. *Id*., 419 ("For several decades after the FTCA's enactment, Congress retained the United

States' sovereign immunity for myriad intentional torts committed by federal employees … . That

changed, however, in response to [the Collinsville raids])(Sotomayor, J. concurring)). According

to the concurrence:

The Committee designed the proviso to ensure "innocent individuals who are subjected to raids of the type conducted in Collinsville, Illinois, will have a cause of action against the individual Federal agents [via suits under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)] *and* the Federal Government [through the FTCA]." *Id*., at 3. * * * Courts, however, should not ignore the existence of the law enforcement proviso, or the factual context that inspired its passage, when construing the discretionary-function exception. Whatever else is true of that exception, any interpretation should allow for liability in the very cases Congress amended the FTCA to remedy.

Viewing the amended complaint in the light most favorable to the Plaintiff, Officer Dias came forward with a false explanation for entering Plaintiff's congressional office, i.e., he found the door to his office standing "wide-open". He then did something that has never been done before by any USCP officer. He photographed the Congressman's whiteboard containing his legislative notes. Any reasonable officer would understand that he or she was not authorized by law to do such a thing. Notwithstanding, other USCP officers decided that Officer's Dias' discovery was worthy of investigation as a criminal matter, albeit the idea that the writings on the board were evidence of a crime being hatched were far-fetched to non-existent. Such the acts are the stuff of a malicious prosecution in the making and thus arise out of that enumerated tort in the law enforcement proviso. Congress used expansive language for the law enforcement proviso because "individuals whose rights were violated by federal law enforcement agents did not have an effective damages remedy against the federal government." Senate Report, *supra*. This means that acts inspired by a motive to place unjustified charges against Plaintiff or undertake illegal means to procure evidence are acts which "arise out of" a malicious prosecution and are actionable under the proviso in § 2680(h).

III.    **THE AMENDED COMPLAINT ALLEGES PLAUSIBLE CLAIMS FOR RELIEF ON ALL COUNTS.**

      **A.  The Allegations of the Complaint Plausibly Allege a Claim for Invasion of Privacy for Intrusion on Seclusion.**

In *Wolf v. Regardie,* 553A.2d 1213, 1216–17 (D.C.1989), the court explained that "[i]nvasion of privacy is not one tort, but a complex of four, each with distinct elements and each describing a separate interest capable of being invaded. The four constituent torts are (1) intrusion upon one's solitude or seclusion; (2) public disclosure of private acts; (3) publicity that places one in a false light in the public eye; and (4) appropriating one's name or likeness for another's benefit." (citation omitted).

The tort of intrusion upon seclusion has three elements: "(1) an invasion or interference by physical intrusion, by use of a defendant's sense of sight or hearing, or by use of some other form of investigation or examination; (2) into a place where the plaintiff has secluded himself, or into his private or secret concerns; (3) that would be highly offensive to an ordinary, reasonable person." *Wolf v. Regardie,* 553A.2d 1213, 217 (D.C. 1989) The Government contends that the complaint fails to plausibly allege the second and third elements of the cause of action. The facts alleged more than suffice to satisfy the second and third elements.

The amended complaint alleges that Officer Dias entered the Plaintiff's congressional office through a closed and locked door (not wide open) and not for public use when the office was closed to the public. It is alleged that the officer stepped into an area reserved for the Congressman's privacy, into which  there was a whiteboard that the Congressman used to write his confidential thoughts and ideas about the legislation. He then looked at the whiteboard, read the writings on it and photographed them, described the writings in an official report, and turned the report and photograph over to USCP which made them a permanent part of its records.   An

intrusion of this kind is one upon the seclusion of another or his private affairs or concerns and satisfies the second element of the claim of intrusion upon seclusion.

The Government argues that Plaintiff fails to make the requisite showing of seclusion, because (1) Officer Dias intruded on Plaintiff's privacy by entering his office without authorization, citing to ¶ 25 of the amended complaint, and that it is no more than a "conclusory" allegation; 2) that the amended complaint is "devoid" of allegations establishing that Plaintiff reasonably considered his congressional office to be private; and (3) that many members of the public come to meet with their congressman frequently, cleaning crews come in the office, and generally that the office is not a zone of exclusion which society regards as sacrosanct. In response to points #1 and #2, ¶ 25 does not allege that Officer Dias entered the office without authorization. The amended complaint plainly alleges that the conditions for a yellow alert check were not in effect, that the officer entered through a private door not intended for the public, that the door was closed and locked, and that it was not wide-open as the officer claimed in his report. Furthermore, the amended complaint alleges that the Congress exercised a possessory right over the his office and has the right to exclude persons from the office and that the whiteboard was in an area reserved for the Congressman's privacy and that the writings on it were confidential and private. These are not "conclusory" allegations, but well pleaded facts adequate to give the Government notice of the nature of the claim against him.   In response to points raised in # 3, the amended complaint makes clear that the whiteboard was in a place reserved for the Congressman's privacy.  This reasonably means that the public is not allowed in that area.  That a cleaning crew and the Congressman's staff could access his office does not diminish the Congressman's expectation of privacy in the place reserved for his privacy. Furthermore, a congressman knows and expects that a cleaning crew at the U.S. Capitol is properly trained and will not pry into a member's private writings.  Similarly,

a congressman's staff is bound to maintain a member's privacy.  A member of Congress expects that staff will not communicate private matters to the public.

The Restatement of Torts, § 867, summarizes the right of privacy, stating: "A person who unreasonably and seriously interferes with another's interest in not have his affairs  known to others or his likeness exhibited to the public is liable to the other." The invasion into the Plaintiff's private affairs falls squarely under the right of privacy.  It is in the nature of the types of invasions that are intrinsic in the tort of intrusion upon seclusion that this the cause of action seeks to redress.  Those include "harassment"; "peeping through windows or into locations in which a plaintiff has chosen to seclude himself"; "opening personal mail"; "eavesdropping on private conversation"; "entering a home without permission or searching his or her belongings"; "examining a person's private bank account"; "or other invasions of that nature." *Wolf v. Regarie*, 553 A.2d 1217-18.

*Pearson v. Dodd*, 410 F.2d 701 (D.C. Cir . 1969), *cert. denied*, 395 U.S. 947 (1969) is the closest case that can be found to the present case. There papers were taken from U.S. Senator Thomas Dodd's office overnight, without the Senator's authorization, and then copied and returned the next day to the Senator's office.  Some journalists read the files and used them to write articles and publish them in the newspapers.  The Court's opinion stated, *id*., 705:

> We approve the extension of the tort of invasion of privacy to instances of intrusion, whether by physical trespass or not, into *spheres from which an ordinary man is [sic] a plaintiff's position could reasonably expect that the particular defendant should be excluded.*  Just as the Fourth Amendment has expanded to protect citizens from government intrusions where intrusion is not reasonably expected, so should tort law protect citizens from other citizens.  The protection should not turn exclusively on the question of whether the intrusion involves a technical trespass under the law of property. The common law, like the Fourth Amendment, should protect people not places.  (*Emphasis added*.)

Like Senator Dodd, Congressman Nehls had a right to expect that a person or persons would not enter his congressional office and photograph his private notes without his knowledge or consent. The Speech and Debate Clause of the U.S. Constitution, Art. I, § 6, includes within its

reach anything done in a session of the House by one of its members in relation to the business before it. *Gravel v. United States*, 408 U.S. 606, 624 (1972). The Congressman's notes on his whiteboard were an "integral part of the deliberative and communicative process by which members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id*., 625. In sum, Congressman Nehls' amended complaint states a facially plausible claim for intrusion upon seclusion.

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, *papers*, and *effects*, against unreasonable searches and seizures, shall not be violated … U.S.CONST., Amend.IV. (*Emphasis added*.). The complaint alleges that Officer Dias entered the Congressman's office on patently false and illegal grounds, i.e., the door was "wide open" and the officer lacked a search warrant. *See v. City of Seattle*, 387 U.S. 541, 545 (1967)("administrative entry, without consent, upon the portion of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of the warrant procedure").

As to the third element of an intrusion upon seclusion, the allegations of the amended complaint plausibly demonstrate an intrusion that would be highly offensive to a reasonable person in Congressman Nehls' position. In law, a warrantless entry is deemed to be highly offensive and suffices to satisfy the third element of the tort. *Garay v. Liriano,* 943 F.Supp.2d 1, 51 (D.D.C. 2013)(citing several cases).

The Government argues that the notes were not about the Plaintiff's personal life and therefore a reasonable person would not be offended if the information was intruded upon. The argument is untenable. The privacy and confidentiality of a congressman's thoughts and ideas

about legislation or any other matters before Congress is vital to a properly functioning legislature. *See*, *In re Sealed Case*, 80 F.4d 355, 365 (D.C. Cir. 2023)("Just as the other branches may not compel verbal testimony concerning legislative acts, they may not force Members to hand over documentary evidence of those acts."). This is why the Court in *Dodd* had no difficulty extending the tort of invasion of privacy to instances of intrusion into spheres from which an ordinary man in the position of a Senator or Representative could reasonably expect that a stranger or uninvited visitor would not be allowed to go. Any reasonable person in the position of Congressman Nehls or any other congressman for that matter would be highly offended if an officer entered his office and intruded by going into places reserved for the congressman's privacy, including places or things which embody private writings, notes and other medium of thoughts and ideas about legislation or any other matter of importance to the legislator's business and duties.

### B.  The Amended Complaint States a Claim for Publication of Private Facts.

The publication of private facts tort has five elements: (1) publicity, (2) the absence of a waiver or privilege, (3) given to private facts, (4) in which the public has no legitimate concern, and (5) and which would be highly offensive to a reasonable person of ordinary sensibilities. *Doe v. Bernabei & Wachtal, PLLC*, 116 A.3d  1262, 1267 (D.C. 2015).

With respect to this claim, the Government makes several contentions for dismissal: that the Congressman lacked an expectation of privacy in his congressional office, because there is no privacy in what one leaves open to the public eye; that that it was standard procedure in accordance with USCP policy for officers to routinely enter any unlocked office to look for anything out of the ordinary; that the Congressman's notes were not of a personal nature and a reasonable person would not be offended if such information were intruded upon; and that there was a lack of publicity of private facts.  Each contention is addressed as follows.

### 1.  Privacy of the Notes

Congressman Nehls already has addressed the Government's contention that he lacked an expectation of privacy in his congressional office.  As stated above, it may reasonably be inferred that the whiteboard was kept in "a place where Plaintiff secluded himself," i.e., a place maintained for the Congressman's privacy and secrecy with respect to legislation he intended to propose to the House.

### 2.  The Contention that the Officer Complied with USCP Policies Falls Outside of the Allegations of the Complaint and is Not a Proper Basis for a Motion to Dismiss.

The Government contends that Officer Dias' entry was through an unsecured (unlocked) congressional office and in accord with USCP policy. Officer Dias reported that he "found room 1104 member and staff door wide open."  Amended Complaint ⁋ 14(b).  But the complaint alleges that the officer's reported statement is false since the door was "not wide open" due to it being mechanically "self-closing" and in good working order.; and the complaint further alleges that the door was not propped open. Contrary to these well-pleaded facts, the Government maintains that the Officer was engaged in a routine door check and merely discovered the door unlocked by turning the door handle.  For this factual matter, the Government relies upon the USCP's Inspector General Report, which it contends was incorporated by reference in the complaint. Plaintiff disputes that the Report is incorporated in the complaint.  Thus, the Government may not rely upon matters in the IG Report to dispute the complaint's allegations under Rule 12(b)(6). Finally, the amended complaint's allegations dispel Officer Dias' claim that his entry into the congressional office was based on a "yellow alert check," because the conditions for that kind of alert did not exist that day, i.e., there was no report of a bomb or an explosive device on Capitol grounds that day.

### 3.   The Notes on the Whiteboard are Private, Not Public, Facts.

The Government contends the Complaint is legally insufficient to state a claim for publication of private facts for the reason that the Congressman's notes do not relate to his private or home life, citing *Paige v. Drug Enforcement Admin.*, 665 F.3d 1355, 1362-63 (D.C. Cir. 2012). However, the Government's reliance on this case is misplaced. First, the Court in *Paige* applied Florida law with respect to the tort of public disclosure of private facts. *Id*. Second, while a defense to a claim of invasion of privacy by publication of private facts may exist with respect to matters of general public interest, a congressman's notes about proposed legislation are not "public facts" or matters of legitimate public concern, for reasons previously mentioned.

### 4.   Publicity

Given the Congressman's request for an investigation of the matter and desire to seek redress for invasion of his privacy and trespass, it may reasonably be inferred that it is substantially certain the invasion of his private affairs would become public knowledge. *See*, *Armstrong v. Thompson*, 80 A.3d 177, 189 (Da.C. 1993)(A matter is publicized if it is "communicated to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."). Thus, the publicity element of the publication of private facts tort has been satisfied.

### C.  The Trespass Claim Alleges a Plausible Claim for Relief.

There are three elements of a cause of action in the District of Columbia for trespass: (1) an unauthorized entry (2) onto the plaintiff's property (3) that interferes with the plaintiff's possessory interest. *Robinson v. Farley*, 264 F.Supp.3rd 154, 163 (D.D.C. 2017).

The Government contends that the claim for trespass (Count Three) does not state a claim for relief because the facts alleged do not demonstrate that Congressman Nehls "retained an exclusive possessory right to the congressional office he was assigned." It states that a "possessory

interest is defined as the present right to control property, including the right to exclude others, by a person who is not necessarily the owner." *Greenpeace, Inc. v. Dow Chem. Co*., 97 A.3d 1053, 1060 (D.C. 2014). The Government argues that the Complaint lacks facts which show that Congressman Nehls' had exclusive control over who entered the office, and that the complaint establishes that others entered the office in his absence, citing ₱ 7 of the Amended Complaint.

The facts alleged in the complaint make out a plausible claim for trespass founded on the Congressman's exclusive possessory right in his congressional office. It may be reasonably inferred from the complaint that each congressional office had locks on the doors that enabled the Congressman to keep his office locked. This means that he had the authority to exclude others from his office. In sum, the Congressman retained an exclusive possessory right over his office.

### D.  The False Light Invasion of Privacy of Claim States a Claim for Relief.

The Government again maintains that the Plaintiff has failed to make the requisite "showing for publicity." As stated in section B.4 above, it is substantially certain that the matter the Plaintiff's office was entered by the police, a photograph taken of his private notes, and that an ensuing investigation occurred invasion of privacy is substantially certain to become one by public knowledge. The Plaintiff request for an investigation and desire to seek redress for the wrongful acts of invasion of his privacy, the unlawful search of his private notes, and trespass to his office have been communicated to the public at large as an inevitable consequence of the filing of this lawsuit. It's a natural consequence of any illegal act that it may generate publicity as a matter of public interest. The Government who employed the agents and employees responsible for committing illegal and wrongful acts bears liability for the resulting publicity. It is highly offensive false light because it communicates that the Plaintiff was suspected of criminal activity that warranted an entry to his office and collection of evidence.  This places the Plaintiff in a false light to the public and is very damaging to the Congressman's reputation   The Plaintiff had no choice

but to complain and vindicate his rights through requesting an investigation and bringing this lawsuit. This was completely foreseeable.

## IV.    CONCLUSION

Based upon the foregoing, the Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State Claims for Relief must be denied.

/s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III
Bar ID No. 965061
Attorney for Plaintiff
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
301-699-0764 (office) | 301-699-8706 (fax)
troberts@robertsandwood.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a copy of the foregoing was electronically filed on December 8, 2025, via the CM/ECF File & Serve system, and an electronic copy was e-served on:

Kristin McGrory, Esq.
Trial Attorney, Torts Branch
United States Department of Justice
Civil Division
Benjamin Franklin Station, P.O. Box 888
Washington, D.C. 20044
kristin.b.mcgrory@usdoj.gov

/s/ *Terrell N. Roberts, III*
Terrell N. Roberts, III
